UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------x
 PALMER KANE LLC,                          :
                                           :
                      Plaintiff,           :
                                           :        12 Civ. 3890 (TPG)
          – against –                      :
                                           :           OPINION
 SCHOLASTIC CORPORATION,                   :
 SCHOLASTIC, INC., AND CORBIS              :
 CORPORATION,                              :
                                           :
                      Defendants.          :
                                           :
-------------------------------------------x
```

      Plaintiff Palmer/Kane LLC ("Palmer Kane") brings this action alleging copyright infringement, breach of contract, and breach of the implied duty of good faith and fair dealing.  Presently, there are two motions before the court: (1) defendant Corbis Corporation's ("Corbis") motion to dismiss the complaint pursuant to Fed. R. Civ. P 12(b)(6) and Fed. R. Civ. P. 8, and (2) defendant Scholastic Corporation and Scholastic, Inc.'s (collectively "Scholastic") motion to dismiss or, in the alternative, for a more definite statement of the copyright claim pursuant to Rule 12(e).

      For the following reasons, the court grants both motions to dismiss. Scholastic's motion for a more definite statement is moot.

## The Complaint

      This opinion assumes the truths of the facts alleged in the complaint for the purposes of deciding these motions to dismiss.

Plaintiff Palmer Kane is a photography agency that licenses the works of Gabe Palmer, a professional photographer.   Defendant Corbis licenses and distributes photographs to publishers on behalf of photographers.   Defendant Scholastic publishes and distributes textbooks and other educational material throughout the United States.

Palmer created photographs, also called images, for an entity named Palmer/Kane Inc. ("PKI").   PKI registered and became the copyright owner of the photographs identified in Exhibit A of the complaint.   On January 15, 2008, PKI transferred its ownership rights in the photographs to Palmer Kane.   Palmer Kane then registered its copyrights with the United States Copyright Office.   The complaint provides 17 registration numbers covering Palmer Kane's photographs.

Through Corbis, Palmer Kane entered into agreements authorizing Scholastic to publish specific photographs, subject to certain limitations.   Those limitations are not described in the complaint.

### A. Allegations against Scholastic

Palmer Kane alleges that "[u]pon information and belief, Defendants exceeded the licenses it obtained to use Plaintiff's images, reused Plaintiff's works without a license or prior to obtaining a license, and made unauthorized uses of Plaintiff's works." (Compl. ¶ 22).   Specifically, Scholastic exceeded the scope of its licenses by publishing Palmer Kane's photographs in the following publications:   <u>Scholastic Explains Writing Homework</u>, <u>Scholastic Children's</u>

Dictionary, Scholastic Children's Encyclopedia, Book of Knowledge, New Book of
Knowledge, and New Book of Popular Science.

In support of its claim, Palmer Kane attaches Exhibit A, which describes
146 photographs and notes each photograph's licensor or publisher, title, ISBN,
agent, invoice number and date, and image number.  However, Palmer Kane
asserts that Exhibit A does not contain an exhaustive list of the photographs
infringed by Scholastic.   Palmer Kane alleges that, as part of a broader pattern
of infringing activity, Scholastic has concealed its illegal conduct by ignoring
Palmer Kane's request for usage information.   By refusing to provide the
requested information, Scholastic has prevented Palmer Kane from learning the
full extent of Scholastic's unauthorized, unlicensed, and infringing uses of its
photographs.

**B. Allegations against Corbis**

Palmer Kane also alleges that Corbis—one of the agents hired to license
photographs to Scholastic—breached their contract and the implied duty of good
faith and fair dealing in connection with the infringement alleged against
Scholastic.

Palmer Kane entered into a photographer representation agreement with
Corbis (the "Corbis Agreement") on October 3, 2003.  The Corbis Agreement
contains an "Audit Rights" provision, which provides that the photographer has
a right to an "audit of Corbis' records with respect to sales of…Accepted Images."
(Compl., Ex. U, at 5).

On at least three occasions, Palmer Kane requested in writing that Corbis provide "copies of invoices and licenses relating to Palmer Kane images that have been licensed by Corbis." (Compl. ¶¶ 66-69).  However, Corbis refused to provide copies of the license agreements governing Palmer Kane's photographs.  Corbis' refusal, Palmer Kane alleges, breached the "Audit Rights" provision of the Corbis Agreement.

Palmer Kane also alleges that Corbis' refusal also violated contracts Palmer Kane signed with companies later acquired by Corbis.   On June 21, 2000, Palmer Kane entered into a photographer representation agreement with the Stock Market Photo Agency of New York, Inc. (the "TSM Agreement").   On an unspecified date, Palmer Kane signed a photographer representation agreement with Zefa Visual Media Group (the "Zefa Agreement").   Both the TSM and Zefa Agreements contain provisions that grant photographers the right to inspect certain records possessed by TSM and Zefa.   Corbis acquired TSM and Zefa, along with all their contractual rights and obligations in 2000 and 2005, respectively.

The complaint alleges that Corbis breached the TSM Agreement by refusing to produce license agreements related to Palmer Kane's photographs. (Compl. ¶ 53).  The TSM Agreement is attached to the complaint as Exhibit T. Similarly, Palmer Kane claims that Corbis breached the Zefa Agreement. However, Palmer Kane does not quote the Zefa contract or attach the Zefa Agreement to the complaint.  Instead, Palmer Kane attaches a "representative photographer's agreement" as Exhibit Y.

Even if Corbis did not breach any express contractual terms, Palmer Kane alleges that it breached the implied duty of good faith and fair dealing.  Palmer Kane alleges that Corbis' refusal to provide the license agreements prevented Palmer Kane from determining which publishers are infringing its copyrights. Thus, Corbis hindered Palmer Kane's ability to bring copyright enforcement actions against infringing publishers.   In doing so, Corbis deprived Palmer Kane of "the benefit of its bargain."

Palmer Kane also alleges that Corbis "knew or had reason to know that such terms had been violated by licensees" and therefore had a duty to enforce the agreements or assist Palmer Kane in its litigation efforts.  (Compl. ¶ 90).

The complaint also includes a few sentences alleging that Corbis prevented Palmer Kane from obtaining revenues by removing certain photographs from its archive without notifying Palmer Kane.  However, the complaint does not include factual details in support of this claim or connect it to either the breach of contract or breach of good faith claims.

## Discussion

### A. Motion to dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   To establish a facially plausible case, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss, the court accepts as true all well-

pleaded allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff.  See Twombly, 550 U.S. at 555-56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

The court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000).  When documents relied upon in the complaint contradict allegations made in the complaint, the court cannot accept as true the contradictory allegations in deciding a motion to dismiss—the court must rely on the documents.  Schwartzbaum v. Emigrant Mortgage Co., No. 09 Civ. 3848 (SRC), 2010 WL 2484116, at * 3 (S.D.N.Y. June 16, 2010).

**B. Claim I Against Scholastic: Copyright Infringement**

To plead a copyright infringement claim, a plaintiff must allege: 1) that there are specific, original works at issue, 2) that plaintiff owns copyrights in those works, 3) that plaintiff properly registered the copyrights, and 4) the acts that constituted infringement—including the timeframe during which the defendant committed the acts.  Kelly v. L.L. Cool J., 145 F.R.D. 32, 35 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994).  Rule 8 was designed to provide defendants with fair notice of the claims against them and therefore requires that the alleged infringing acts be stated with some specificity.  Id. at 26 n.3.  A plaintiff "may not rest on bare-bones allegations that infringement occurred."

<u>Sharp v. Patterson</u>, No. 03 Civ. 8772 (GEL), 2004 WL 2480426, *12 (S.D.N.Y. 2004).

Here, the complaint fails to sufficiently plead the first and fourth elements of copyright infringement. First, the complaint does not properly specify which photographs are at issue in the case. In <u>Plunket v. Doyle</u>, the complaint attached a spreadsheet listing plaintiffs' original works and identifying registration numbers for a limited number of those works. No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001). However, Plunket alleged that the copyright claims were not limited to those works. <u>Id</u>. Based on that record, the <u>Plunket</u> court determined that the plaintiff had not provided a list of the specific works at issue and thus failed to meet the first <u>Kelly</u> requirement. <u>Id</u>.

Similarly, Palmer Kane asserts that Exhibit A does not contain an exhaustive list of the photographs covered by copyrights that were infringed by Scholastic. As a result, Scholastic cannot know all of the works that Palmer Kane claims it infringed. Presumably in an attempt to avoid this analogy, Palmer Kane alleges that Scholastic has concealed its unauthorized use and thereby prevented Palmer Kane from recognizing the full extent of the infringement. However, Palmer Kane provides no details to support this conclusory allegation.

Failing to plead the first element of copyright infringement is sufficient grounds for dismissal. <u>See Kelly</u>, 145 F.R.D. at 35. However, the complaint also fails to properly allege the infringing acts committed by Scholastic. The complaint contains several broad assertions that Scholastic "exceeded the licenses it obtained to use Plaintiff's images, reused Plaintiff's works without a

license" and used the images "without permission" or "prior to obtaining permission." In Marvullo v. Gruner & Jahr, the court concluded that a complaint alleging that defendants published plaintiff's works "beyond the scope . . . of the limited license, absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss." 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000). Although the complaint need not specify which copyright was infringed by which act, see Richard Feiner and Co., Inc. v. Larry Harmon Pictures Corp., 38 F.Supp.2d 276, 279 (S.D.N.Y. 1999), the complaint must contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement. See Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 251 (S.D.N.Y. 2000).

By identifying books published by Scholastic that contain unauthorized photographs, Palmer Kane alleges some facts that could constitute infringing acts. (See Compl. ¶¶ 31-35). However, these acts are not sufficient because Palmer Kane does not specify the timeframe during which Scholastic committed the infringement. See Mahnke v. Munchkin Products, Inc., No. 99 Civ. 4684 (LTS), 2001 WL 637378 at *5 (S.D.N.Y. June 7, 2001) (dismissing copyright infringement claim for failing to specify the dates or period of time during which defendant allegedly infringed). Although Exhibit A contains an invoice date for each of the photographs, the complaint neither references those dates nor explains how they relate to the time period in which Scholastic infringed on Palmer Kane's copyrights. The complaint simply claims that "Scholastic used

and continues to use Plaintiff's photographs in numerous programs and publications," without any mention as to dates.

One court found that a complaint sufficiently pleaded the time period during which infringement occurred by alleging that "since February 28, 2005 (the date the Complaint was filed), defendant has used and continues to use plaintiff's copyrighted works." Elektra Entm't Grp., Inc. v. Santangelo, No. 05 Civ. 2414 (CM), 2005 WL 3199841, at * 3 (S.D.N.Y. Nov. 28, 2005). For this court to infer that Palmer Kane is alleging that the copyright infringement began no later than on the date the complaint was filed seems like a stretch of the complaint. Moreover, even if the court read that inference into the complaint, Palmer Kane still fails to allege which works were infringed, so the complaint would still be dismissed.

Although the complaint properly alleges that Palmer Kane owns copyrights in the photographs at issue and that the copyrights have been registered, those allegations are not sufficient to state a claim for copyright infringement. Therefore, the court grants the motion to dismiss the copyright infringement claim against Scholastic.

Granting Scholastic's motion to dismiss renders moot the motion for a more definite statement. Accordingly, the court need not address that issue.

### C. Claim II Against Corbis: Breach of Contract

In addition to Palmer Kane's claim against Scholastic, Palmer Kane alleges that Corbis committed a breach of contract.

Both the Corbis and TSM Agreements state that any claims arising under those agreements shall be governed by New York State law.   (See Corbis Agreement ¶ 12.3; TSM Agreement ¶ 15e).  For the reasons explained below, the court cannot analyze the Zefa Agreement based on the information in and attached to the complaint.

### 1. The Corbis Agreement

To state a claim for breach of contract under New York law, a plaintiff must plead: (1) the existence of a contract, (2) adequate performance of the contract by plaintiff, (3) breach of the contract, and (3) injury resulting from the breach. Cordell v. McGraw-Hill Companies, Inc., No. 12 Civ. 0637 (ALC), 2012 WL 5264844 (S.D.N.Y. Oct. 23, 2012) aff'd, 525 F. App'x 22 (2d Cir. 2013).

The parties do not dispute that they signed a valid contract or that Palmer Kane has adequately performed its obligations under the contract.  Only the third and fourth elements are at issue.

Palmer Kane asserts that the "Audit Rights" provision of the Corbis Agreement entitles Palmer Kane to all license agreements relating to its photographs.

Palmer Kane's argument fails for several reasons.  The full text of the "Audit Rights" provision, states:

> No more than once per year, you [the photographer] may request in writing an audit of Corbis' records with respect to sales of your Accepted Images…The auditor shall be subject to Corbis' prior written approval, not to be unreasonably withheld (and not required if such auditor is a validly licensed certified public accountant).   The auditor shall sign Corbis' current non-disclosure Agreement and shall be granted access to all materials that are reasonably necessary in order to perform the audit…

(Compl., Ex. U, at 5).  The text makes clear that a photographer is entitled to request a formal audit.  In turn, Corbis agrees to provider the *auditor*—not the photographer—with documents necessary to conduct the audit.

At this time, Palmer Kane has not even invoked its audit rights.  Although Palmer Kane sent written demands requesting that Corbis disclose the relevant license agreements, it never referenced the audit provision or proposed an auditor, which Corbis would have had the right to approve under the contract.

However, even if Palmer Kane had invoked its audit rights, the provision does not entitle Palmer Kane to the license agreements.  At most, it entitles Palmer Kane's auditor to the license agreements *if* license agreements are "reasonably necessary" to perform a sales audit—an issue the court need not decide given these facts.  Furthermore, given that the auditor would be subject to Corbis' non-disclosure Agreement, it appears unlikely that the auditor would be able to share those license agreements with Palmer Kane.

In short, Palmer Kane never requested an audit, and therefore Corbis' audit obligations were not triggered and could not have been breached.  Given that there can be no injury resulting from a breach if there was, in fact, no breach, the court need not opine on Palmer Kane's alleged injuries.

### 2. The TSM Agreement

Palmer Kane argues that Corbis also breached the terms of the TSM Agreement by failing to provide the license agreements.  However, paragraph 2 of the Corbis Agreement states in relevant part:

> Prior Agreements.  Corbis and you agree that any materials...supplied by you to Corbis and accepted by Corbis (or its predecessor-in-interest) under

> any prior agreements...shall be deemed Accepted Images under this Agreement, and, except as specifically provided for to the contrary, all rights and obligations relating to such Accepted Images under such prior agreements shall be governed solely by the terms and conditions of this Agreement.

(Compl., Ex. U, at 5, ¶ 2).  Under the express terms of the Corbis Agreement, all agreements entered into by Corbis' predecessors-in-interest were superseded by the Corbis Agreement.  This means that the Corbis Agreement became the sole operative agreement governing Palmer Kane's photographs originally licensed in the 2000 TSM Agreement, and the terms of the TSM Agreement no longer apply.

### 3. The Zefa Agreement

Unlike the TSM Agreement, which Palmer Kane appears to concede was nullified by the Corbis Agreement, Palmer Kane asserts that the Corbis Agreement could not supersede the Zefa Agreement because Corbis acquired Zefa in 2005—more than a year after the parties signed the Corbis Agreement. However, the court need not consider that argument at this time because the court does not have before it the relevant language from the Zefa Agreement. Palmer Kane does not quote the contract or attach it to the complaint.  Although a "representative photographer's agreement" is attached, the complaint does not allege that the language in the representative agreement is the same language that appeared in the contract entered into by Palmer Kane and Zefa.  Moreover, all parties involved in this case are sophisticated parties who may have tailored their agreements for specific clients.

Additionally, Palmer Kane does not specify a date on which the Zefa Agreement was signed or the date on which the representative agreement was

drafted.  It is possible that the representative agreement was modified over time, so it may not reflect the language contained in the Zefa Agreement.

Therefore, even if the Corbis Agreement does not supersede the Zefa Agreement, the court is not able to determine whether Corbis breached the Zefa Agreement.

### D. Claim III Against Corbis: Breach of the Implied Duty of Good Faith and Fair Dealing

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).  Consequently, a claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim.  See Cordell, 2012 WL 5264844, at *4.  "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim." ARI & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003)

In this case, Palmer Kane's breach of good faith claim is based on the same allegations underlying its breach of contract claim.  Any damages suffered by Palmer Kane as a result of the alleged breach of good faith would be the same as

those caused by the alleged breach of contract.  There is no "separate and distinct wrong".

However, even assuming that Palmer Kane does allege a distinct wrong, its claim for breach of good faith still fails.  Palmer Kane claims that by refusing to provide copies of the license agreements, Corbis "deprived Palmer/Kane of the benefit of its bargain".  However, the complaint contains no facts suggesting that access to license agreements was a benefit of the bargain with Corbis.  The "Audit Rights" provision does not mention license agreements or the production of documents generally.  Moreover, the provision is included in the "Standard Terms and Conditions" section of the contract and is not specific to Palmer Kane.  If Palmer Kane intended to bargain for license agreements, it did not make that clear in the Corbis Agreement.

Similarly, Palmer Kane pleads no facts that suggest it bargained for Corbis' assistance in litigating infringement claims.   To the contrary, the Corbis Agreement states:

> Corbis, in its sole discretion and without obligation to do so, shall have full and complete authority to make and settle claims or to institute proceedings in Corbis' or your name…for the unauthorized use of Accepted Images.  You shall provide reasonable assistance in Corbis' efforts in connection with such claim or proceedings.

(Compl. Ex. U., at 5).  Section 6 of the Corbis Agreement clearly states that Corbis has discretion and no obligation to institute legal proceedings for the unauthorized use of photographs.  No provision suggests that Corbis must aid Palmer Kane.  By contrast, the contract explicitly requires Palmer Kane to "provide reasonable assistance" to Corbis if Corbis commences an action.  The

fact that the contract imposes an obligation on Palmer Kane to assist Corbis in the event of litigation but does not impose a reciprocal requirement on Corbis eviscerates Palmer Kane's claim that it negotiated for the benefit of Corbis' legal assistance.

Finally, Palmer Kane asserts that Corbis "knew or had reason to know that such terms had been violated by licensees" and therefore breached the duty of good faith.   To support this claim, Palmer Kane merely alleges that Corbis entered into license agreements with publishers regarding Palmer Kane photographs and that Corbis has not provided the licenses to Palmer Kane. These allegations do not support Palmer Kane's conclusory allegation.  Palmer Kane fails to identify who at Corbis knew about the alleged violations, how that person learned of the violation, or why Corbis would fail to collect money on behalf of its client.   Merely stating that Corbis refused to provide license agreements falls far short of making a plausible claim that Corbis intentionally refused to enforce the terms of its license agreements.

## Conclusion

Palmer Kane fails to sufficiently plead copyright infringement, breach of contract, and breach of the implied duty of good faith and fair dealing. Accordingly, the court dismisses the claims against all defendants pursuant to Rule 12(b)(6).   Granting the motion to dismiss renders moot the alternative request for a more definite statement.

This order resolves the docket items located at Doc. Nos. 8, 27, and 33.

SO ORDERED.

Dated:  New York, New York

          March 31, 2014

Thomas P. Griesa

United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/31/14